IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


)
TOM MAXWELL and KEN MOSHER,      )
)
    Plaintiffs,              )
)
    v.                       )    1:06CV00510
)
CHRISTOPHER PHILLIPS,            )
JAMES MATHUS, ERIK SELZ, and     )
RED RYDER ENTERTAINMENT, INC.,   )
)
    Defendants.              )


<u>MEMORANDUM OPINION and ORDER</u>


OSTEEN, District Judge


    Plaintiffs Tom Maxwell and Ken Mosher are former members of
the band Squirrel Nut Zippers ("SNZ").  They filed a complaint
against former band members Christopher Phillips and James
Mathus, as well as the band's management, Red Ryder
Entertainment, Inc. ("Red Ryder") and Erik Selz (collectively,
"Defendants"), to recover royalties and other money owed to them
for their work with the band.  Now before this court are
Defendants Red Ryder's and Erik Selz's Motion to Dismiss,
Defendants Red Ryder's and Erik Selz's Motion to Dismiss Mathus'
Cross-Claim, Defendant Christopher Phillips' Motion to Dismiss,
and Motion of Defendant Mathus for Leave to Join in the Rule
12(b) Motions of the Other Co-defendants.  For the reasons
explained below, the court will dismiss the cross-claim of

Defendant Mathus, deny in part the motions to dismiss, and grant Mathus' motion for leave to join in the Rule 12(b) motions of the other co-defendants.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

Katherine Whalen and Defendant James Mathus formed the band SNZ in 1993. Defendant Christopher Phillips and Plaintiffs Tom Maxwell and Ken Mosher became members of SNZ in 1996, at which point all members of the band signed a partnership agreement. The band was successful for a period of time and produced one album that attained platinum status and another that reached gold status.

At some point in 1999, certain members of SNZ other than Plaintiffs entered into a management agreement with Erik Selz and Red Ryder Entertainment, Inc. (collectively, "Red Ryder"). This agreement gave Red Ryder a 15% commission on the band's income in exchange for promoting the band, overseeing various administrative tasks, and accounting for and distributing the band's revenue. Later that same year, Plaintiffs quit the band.

After leaving the band in 1999, Plaintiffs sought past-due royalties and commissions from Red Ryder. When Plaintiffs' pursuits became unsuccessful, they brought an arbitration proceeding against SNZ in accordance with the terms of their partnership agreement. In October 2002, the arbitrator awarded Plaintiffs $345,000. Before the Orange County Superior Court

2

confirmed the arbitrator's award, Plaintiffs and SNZ entered into
a settlement agreement and a consent judgment. According to the
terms of the agreement, SNZ would pay Plaintiffs a fixed sum of
money in addition to any unpaid royalties owed Plaintiffs prior
to 2003 and any royalties that accrued after 2002. The terms of
the agreement also required SNZ and its agents to provide regular
accounting statements to Plaintiffs. In exchange for settling
the dispute, Defendants were released from any existing claims,
whether known or unknown.

Subsequent to the agreement, Plaintiffs learned that
Defendants were less than forthright during settlement
negotiations. According to Plaintiffs, Defendants produced
fraudulent and intentionally inaccurate documents relating to the
amount of royalties Plaintiffs were owed. Additionally,
Plaintiffs claim that Defendants have continued to conceal the
true amount of royalties owed to them by diverting income through
the accounts of Red Ryder instead of a proper third party. Upon
learning about Defendants' behavior, Plaintiffs filed suit
against them alleging seven counts: (1) breach of contract, (2)
breach of fiduciary duty, (3) conversion, (4) fraud, (5) mail and
wire fraud in violation of the Racketeering Influenced and
Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (c)(6),
conspiracy to conduct mail and wire fraud in violation of RICO,

18 U.S.C. § 1962(d), and (7) unfair and deceptive trade practices in violation of North Carolina General Statute § 75-1.1.

## II.   LEGAL STANDARD

Defendants submitted a Federal Rule of Civil Procedure Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  A motion to dismiss tests the legal sufficiency of a challenged pleading, but it does not resolve disputes surrounding the facts or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).  When analyzing a Rule 12(b)(6) motion, a court is not to decide if a plaintiff will ultimately prevail, but, rather, the court must assess whether plaintiff should even be allowed to present evidence of his claim.  Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

The pleading setting forth the claim must be "liberally construed" in the light most favorable to the nonmoving party and allegations made therein are taken as true.  Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849 (1969).  The key issue is not whether the plaintiff will prevail on his claim, but whether he is entitled to offer evidence in support of the claim.  Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).  A court should dismiss a case on Rule 12(b)(6) grounds "only in very limited circumstances," Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989),

4

specifically, only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). A plaintiff need not plead detailed evidentiary facts, and a complaint is sufficient if it will give a defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. See Bolding v. Holshouser, 575 F.2d 461, 464 (4th Cir. 1978). "Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege any facts [that] set forth a claim." Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004).

**III. ANALYSIS - RED RYDER'S AND PHILLIPS' MOTIONS TO DISMISS**

Defendants claim that dismissal of this case is warranted on two separate grounds: (1) that the settlement agreement between Plaintiffs and Defendants bars this action because it released Defendants from liability, and (2) assuming that the settlement agreement does not bar the suit, that Plaintiffs failed to plead sufficient facts in their amended complaint to support their claims.

**A. Release Clause and Fraud Claims**

Plaintiffs and Defendants entered into a settlement agreement containing a release clause that prevents Plaintiffs

5

from pursuing any action against the former band members or any of the band's "present and former partners, employees, agents, representatives, attorneys, predecessors, successors, subsidiaries and assigns." (Br. Supp. Def. Christopher Phillips' Mot. Dismiss Ex. B at 4.) According to Defendants, this release clause insulates them from any and all liability. At issue before this court is whether the release clause is applicable if the agreement between the parties was procured or induced by fraudulent misrepresentation.

Generally, "the execution of a release based on valuable consideration . . . provides a complete defense to an action for damages." Talton v. Mac Tools, Inc., 118 N.C. App. 87, 90, 453 S.E.2d 563, 565 (N.C. Ct. App. 1995). In order to prevent a release clause from voiding a cause of action covered by the terms of an agreement, a party must show "that its execution resulted from fraud or a mutual mistake of fact." Id. (citation omitted).[1]

Plaintiffs claim that Defendants induced them to enter a settlement agreement by fraudulently claiming that SNZ had no means of paying the arbitration award. If Plaintiffs establish a

---

[1] It is important to distinguish actions for previous acts of fraud from those for fraudulent inducement to enter a release. The former are not actionable if covered by a release, the latter defeat a release. See Talton, 118 N.C. App. at 90, 453 S.E.2d at 565; Financial Servs. of Raleigh v. Barefoot, 163 N.C. App. 387, 594 S.E.2d 37 (N.C. Ct. App. 2004).

prima facie allegation of fraud, then the release contained in the settlement agreement may be avoided. In order to state a prima facie claim for fraud in North Carolina, a plaintiff must allege facts showing: (1) a misrepresentation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) and made with the intent to deceive (scienter), (4) that actually deceives the plaintiff, and (5) which results in damage to the plaintiff. <u>Andrews v. Fitzgerald</u>, 823 F. Supp. 356, 375 (M.D.N.C. 1993) (citing <u>Myers & Chapman, Inc. v. Thomas G. Evans, Inc.</u>, 323 N.C. 559, 568, 374 S.E.2d 385, 391 (1988)).

In viewing the facts in a light favorable to Plaintiffs, the amended complaint sufficiently alleges a prima facie case for fraud. Plaintiffs claim that Defendants intentionally misrepresented the financial assets of SNZ.[2] Not only do they state that Defendants concealed a large amount of royalties owed to them by Disney and Mammoth records, but also that Defendants produced a false settlement agreement from another legal matter in order to keep the amount of royalties owed to Plaintiffs

---

[2] Defendants maintain that Plaintiffs cannot satisfy the pleading requirements of the Federal Rules of Civil Procedure by making a claim "upon information and belief." However, "[a]llegations of fraud may be made 'upon information and belief' only when the matters are particularly within the defendants' knowledge, and facts are stated upon which the belief is founded." <u>Andrews v. Fitzgerald</u>, 823 F. Supp. 356, 375 (M.D.N.C. 1993). In this matter, the financial statements are particularly within Defendants' knowledge and Plaintiffs have stated sufficient facts upon which they base their beliefs.

7

hidden.  As a result of this representation, Plaintiffs settled for an amount of money that was less than that awarded to them during arbitration.  In settling for a lower amount of money, Plaintiffs sustained actual damages.  These facts demonstrate that Defendants knowingly made false statements to Plaintiffs with the intent to deceive them.  Plaintiffs relied on Defendants' misrepresentations and suffered damages.  Accordingly, the release clause will not bar Plaintiffs' suit and Defendants' motion to dismiss the fraud claims will be denied.

**B. Sufficiency of Complaint as to Identity of Defendants**

Red Ryder Defendants maintain that Plaintiffs' amended complaint is insufficient because it does not identify with proper specificity the individuals who are responsible for the individual actions.  Though Plaintiffs use broad terms incorporating either all or some of the individually named defendants, the amended complaint is sufficiently clear to determine which of the defendants are responsible for the individual actions.  See, e.q., Breeden v. Richmond Community College, 171 F.R.D. 189, 197 (M.D.N.C. 1997) ("[W]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.").  Accordingly, Plaintiffs' claims do not fail on account of vagueness.

8

**C. Breach of Fiduciary Duty**

The Red Ryder Defendants challenge Plaintiffs' breach of fiduciary claim on the basis that no fiduciary relationship existed between Red Ryder and Plaintiffs. In order to establish a prima facie case for breach of a fiduciary duty, a plaintiff must demonstrate the existence of a fiduciary relationship. Curl v. Key, 311 N.C. 259, 264, 316 S.E.2d 272, 275 (1984); White v. Consol. Planning, Inc., 166 N.C. App. 283, 293, 603 S.E.2d 147, 155 (N.C. Ct. App. 2004). A fiduciary relationship exists "wherever confidence on one side results in superiority and influence on the other side; where a special confidence is reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence." White, 166 N.C. App. at 293, 603 S.E.2d at 155 (citing Vail v. Vail, 233 N.C. 109, 114, 63 S.E.2d 202, 206 (1951)). This relationship "extends to any possible case in which a fiduciary relation exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other." Harrold v. Dowd, 149 N.C. App. 777, 784, 561 S.E.2d 914, 919 (N.C. Ct. App. 2002) (citing Abbitt v. Gregory, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)).

In this case, Plaintiffs allege that Red Ryder served as SNZ's manager and accordingly acted as Plaintiffs' agent. Red Ryder argues that this alone was not sufficient to establish a

9

trust relationship. Though courts have been generally reluctant to define "fiduciary relationship" with great precision, they have stated that "one type of confidential relationship that would support a constructive fraud claim is where one is the general agent of another and has entire management, so as to be in effect, as much his guardian as the regularly appointed guardian of an infant." Terry v. Terry, 302 N.C. 77, 84, 273 S.E.2d 674, 677-78 (N.C. 1981) (citation and internal quotations omitted); see also Abbitt, 201 N.C. 577, 160 S.E. 896; Lee v. Pearce, 68 N.C. 76 (N.C. 1872).

Plaintiffs state that the Red Ryder Defendants acted in a capacity where they received, managed, and exerted control over payments from third parties made to Plaintiffs. These facts, if true, are sufficient to form the basis of a fiduciary relationship. Red Ryder served as a manager and fiduciary to the partnership SNZ. Though Red Ryder was not directly engaged by Plaintiffs to serve as their manager, Red Ryder owed them the same duty owed to all partners of SNZ. As manager, Red Ryder became the guardian of Plaintiffs' royalties and mechanicals. When Plaintiffs left the partnership, Red Ryder continued to receive and manage funds on Plaintiffs' behalf. Therefore, a continuing fiduciary relationship existed. Accordingly, Red Ryder's motion to dismiss the breach of fiduciary claim will be denied.

10

A fiduciary relationship also existed between Plaintiffs and Defendants Phillips and Mathus. Though Mr. Phillips claims that the legal proceedings terminated the fiduciary relationship, the partnership was still entrusted with distributing the royalties owed to Plaintiffs. Mr. Phillips cites to <u>Piedmont Institute of Pain Management v. Staton Foundation</u>, 157 N.C. App. 577, 581 S.E.2d 68 (N.C. Ct. App. 2003), for the legal authority to support his position that legal proceedings void a fiduciary relationship. The court found that a fiduciary relationship no longer existed between the parties because it had been expressly repudiated. The North Carolina Court of Appeals referenced one of its prior decisions involving the termination of a confidential marital relationship as the reasoning behind its holding. <u>Piedmont Inst. of Pain Mgmt.</u>, 157 N.C. App. at 583-84, 581 S.E.2d at 72-73 (citing <u>Lancaster v. Lancaster</u>, 138 N.C. App. 459, 530 S.E.2d 82 (2000)). In <u>Lancaster</u>, the court determined that the confidential relationship between a husband and wife ended when they engaged in a legal proceeding to terminate their marriage. The court stated that though this confidential relationship had ended, the parties were still prohibited from "engag[ing] in unconscionable behavior when entering into a separation agreement." <u>Lancaster v. Lancaster</u>, 138 N.C. App. 459, 463, 530 S.E.2d 82, 85 (N.C. Ct. App. 2000) (citation omitted). Among the types of behavior that qualified as

11

unconscionable by the court, were those of "fraud, coercion, undue influence, misrepresentation, inadequate disclosure, duress, and overreaching." Id. (citation omitted).

In this case, Plaintiffs initiated a legal proceeding against Defendants to recover royalties owed them from their participation in the SNZ partnership. Though the partnership had been severed and legal proceedings were instituted against the former members, SNZ continued to owe Plaintiffs a fiduciary duty not to engage in fraud or misrepresentation. This duty exists on account of Plaintiffs' claim that Mr. Phillips, as well as all other defendants, was in a position where he could exercise control over payments from third parties made to benefit Plaintiffs as partners in SNZ. This responsibility was never repudiated by Defendants. Additionally, even assuming that any fiduciary duties had dissolved on account of the legal proceedings, Mr. Phillips still owed a duty to Plaintiffs not to engage in the unconscionable behavior alleged by Plaintiffs, specifically fraud. Accordingly, Mr. Phillips' motion to dismiss Plaintiffs' breach of fiduciary duty claim will be denied.

### D. Conversion

Defendants argue that Plaintiffs' claim for conversion should be dismissed because Plaintiffs did not specify the amount of money allegedly converted to Defendants' personal use. Under North Carolina law, conversion is the "unauthorized assumption

12

and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." Alderman v. Inmar Enters., 201 F. Supp. 2d 532, 547 (M.D.N.C. 2002) (citing Spinks v. Taylor, 303 N.C. 256, 264, 278 S.E.2d 501, 506 (1981)). In order to prevail on a conversion claim, a "plaintiff must prove both ownership in himself and the wrongful possession or conversion of the property by the defendant." Id. at 547-48 (citing Gadson v. Toney, 69 N.C. App. 244, 246, 316 S.E.2d 320, 321-22 (N.C. Ct. App. 1984)). When the cause of action is for the conversion of money, that money must be identifiable and described as a specific chattel. Id. at 548 (citation omitted).

In this case, Plaintiffs alleged that Defendants exercised ownership over the royalties owed to them to the exclusion of Plaintiffs' rights. Though Plaintiffs did not specify the exact amount of money allegedly converted by Defendants, they did describe it in a way that would allow it to be identifiable. Plaintiffs identified the money as royalties, something that can exist as a specific chattel. At the motion-to-dismiss stage, this allegation is sufficient, especially considering that the documents and information necessary to learn of the amount of royalties owed is in the possession of Defendants. Accordingly, the Defendants' motions to dismiss the conversion claim will be denied.

13

**E. Racketeering Influenced and Corrupt Organizations Act Claims**

Defendants claim that Plaintiffs' claims under RICO should be dismissed because Plaintiffs fail to allege a pattern of activity and instead seek to recover on an ordinary business dispute. In order to bring a claim for RICO civil liability on account of a violation of 18 U.S.C. § 1962(c) and (d), a plaintiff must establish the following elements: (1) an enterprise and (2) a pattern (3) of racketeering activity. Sedima S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496, 105 S. Ct. 3275, 3285 (1985). Though the statutory provision, 18 U.S.C. § 1961(5), defines "pattern" as at least two acts of racketeering activity within a ten-year period, the Supreme Court has held "that allegation of two of these predicate acts, while necessary, is not sufficient to satisfy the pattern of racketeering requirement." H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S. Ct. 2893 (1989) (internal quotations omitted). In order to determine whether alleged conduct rises to the level of a pattern of racketeering, the Supreme Court devised a two-part test: (1) whether the predicate acts are related, and (2) whether they pose a threat of continued criminal activity. Id.

Plaintiffs have properly alleged the existence of an enterprise and corresponding predicate acts of fraud in which the mail and/or wire systems were used. Plaintiffs' RICO claims fail, however, because the alleged fraud committed by Defendants

14

does not qualify as a pattern of racketeering activity for the purposes of 18 U.S.C. § 1961(5). See Flip Mortgage Corp. v. McElhone, 841 F.2d 531, 538 (4th Cir. 1988). In Flip Mortgage Corp., the Fourth Circuit determined that allegations of fraud stemming from a computer service company withholding revenue owed to its business partner, a financial services company, "[did] not rise above the routine, and [did] not resemble the sort of extended, widespread, or particularly dangerous pattern of racketeering which Congress intended to combat with federal penalties." Id. (citation omitted). Instead, the court determined that the defendant's long-term practice of defrauding and cheating the plaintiff out of money under their contract was merely an ordinary business contract or fraud dispute.

The facts of Flip Mortgage Corp. are nearly identical to the facts before this court. Here, Plaintiffs allege that Defendants fraudulently withheld royalty payments in violation of a fiduciary duty and contract. This type of dishonest business practice or doubtful accounting method, like that in Flip Mortgage Corp., is no more than an ordinary business dispute. To treat it otherwise "would transform every such dispute . . . [into] a cause of action under RICO." Id. (citation and internal quotations omitted). Accordingly, the court will dismiss Plaintiffs' RICO claims.

**F. Unfair and Deceptive Trade Practices**

Defendants challenge Plaintiffs' Unfair and Deceptive Trade Practices Act ("UTPA") claim on the grounds that Plaintiffs fail to allege an actionable claim and fail to allege that Defendants' acts affected the consuming public.  In order to establish a prima facie case of a violation of the UTPA, a party must prove: "(1) an unfair or deceptive act or practice . . . , (2) in or affecting commerce, and (3) which proximately caused actual injury to the plaintiff or his business." Wysong & Miles Co. v. Employers of Wausau, 4 F. Supp. 2d 421, 433 (M.D.N.C. 1998) (citation and internal quotations omitted).  Though the language of the Act is quite broad, it does not cover all ordinary business disputes.  Courts have limited the application of the UTPA, stating that a "simple breach of contract, even if intentional, does not amount to a violation of the Act." Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989) (citation omitted); see also Canady v. Crestar Mortg. Corp., 109 F.3d 969, 975 (4th Cir. 1997) ("A mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under the UTPA.").  To properly establish a claim for violation of the UTPA when the breach of a contract is involved, "a plaintiff must show substantial aggravating circumstances attending the breach to recover." Bartolomeo, 889 F.2d at 535 (citation omitted).  In analyzing

16

whether a violation of the UTPA has occurred, "the question of whether the defendant acted in bad faith is not pertinent." Marshall v. Miller, 302 N.C. 539, 544, 276 S.E.2d 397, 400 (N.C. 1981).

In this case, Plaintiffs' allegations of fraud, conversion, and breach of fiduciary duty are sufficient to constitute "aggravating circumstances" that would give rise to a UTPA claim. See Spence v. Spaulding and Perkins, Ltd., 82 N.C. App. 665, 347 S.E.2d 864 (N.C. Ct. App. 1986) (North Carolina case law has held that conduct constituting a breach of fiduciary duty and constructive fraud is sufficient to support a UTPA claim.); Rosenthal v. Perkins, 42 N.C. App. 449, 455, 257 S.E.2d 63, 67 (N.C. Ct. App. 1979) ("[P]roof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts.") (citation and internal quotations omitted). The proper inquiry in this matter, however, "is not whether a contractual relationship existed between the parties, but rather whether the defendants' allegedly deceptive acts affected commerce." Durling v. King, 146 N.C. App. 483, 488-89, 554 S.E.2d 1, 4 (N.C. Ct. App. 2001) (citation and internal quotations omitted). This analysis "usually depends upon the facts of each case and the impact the practice has in the marketplace." Id. at 489, 554 S.E.2d at 4 (citing Pan American

17

<u>World Airways, Inc. v. United States</u>, 371 U.S. 296, 83 S. Ct. 476 (1963)).

Plaintiffs alleged that Defendants' misrepresentations were sufficient to constitute an unfair or deceptive act. Plaintiffs, however, failed to address how Defendants' alleged acts affected commerce. The UTPA defines commerce broadly as "business activities, however denominated." N.C. Gen. Stat. § 75-1.1(b). The Supreme Court of North Carolina and the Fourth Circuit Court of Appeals, however, "ha[ve] cautioned that the act is not intended to apply to all wrongs in a business setting." <u>Freeman v. Duke Power Co.</u>, 114 Fed. Appx. 526, 535 (4th Cir. 2004) (citation and internal quotations omitted). Courts in North Carolina have failed to address whether the UTPA would apply to a settlement agreement between businesses or business partners.[3] The courts that have had related matters before them, however, have dismissed the claim on other grounds, thereby avoiding this question. <u>See</u> <u>Bynum v. Hobbs Realty</u>, 2002 U.S. Dist. LEXIS 19499 (M.D.N.C. 2002) (The court granted a defendant's motion for summary judgment on a UTPA claim based on allegedly deceptive settlement agreement negotiations on the grounds that there was no deceptive act because the parties demonstrated a simple

---

[3] There are cases interpreting the UTPA as applicable in situations where unfair or deceptive acts occur between partners in a partnership. <u>See</u> <u>Compton v. Kirby</u>, 157 N.C. App. 1, 577 S.E.2d 905 (N.C. Ct. App. 2003).

misunderstanding of the terms of the agreement.); <u>Keyzer v.</u>
<u>AmerLink, Ltd.</u>, 2005 N.C. App. LEXIS 1729 (N.C. Ct. App. 2005)
(The court determined that the plaintiff failed to present
evidence raising a genuine issue of material fact on the issue of
unfair or deceptive trade practices because the plaintiff
presented no evidence that he believed, relied on, or was
deceived by defendants' representations.).

    In this case, the settlement agreement between Plaintiffs
and Defendants was an attempt to resolve a dispute regarding
Plaintiffs' entitlement to royalty payments.  Though the
settlement took place in a business environment, "no evidence was
presented [or alleged] that the subject transactions had any
impact beyond the parties' . . . relationships." <u>Durling</u>, 146
N.C. App. at 489, 554 S.E.2d at 5.  Though Plaintiffs alleged
that "Defendants' unfair, false, misleading and deceptive acts
and practices have affected commerce and the consuming public in
the State of North Carolina," they fail to offer any supporting
basis that could lead to this conclusion.  While the federal
pleading requirements are not overly strict, they do not allow a
plaintiff to make bare conclusions that are unsupported by
specific allegations of material fact.  <u>See</u> <u>Simpson v. Welch</u>, 900
F.2d 33, 35 (4th Cir. 1990) (citations omitted).  Instead, a
plaintiff must allege facts that support each element of the
claim in terms that are not vague or conclusory.  <u>Dickson v.</u>

<u>Microsoft Corp.</u>, 309 F.3d 193, 201-02 (4th Cir. 2002). Here, the amended complaint fails to show how Defendants' acts affected commerce or the consuming public. Accordingly, Plaintiffs' claim under the UTPA will be dismissed.

**G. Breach of Contract**

In addition to alleging that Defendants fraudulently induced them to enter a settlement agreement, Plaintiffs also claim that Defendants Phillips and Mathus are in breach of that very agreement. Plaintiffs base this action on the grounds that Messrs. Phillips and Mathus failed to forward to Plaintiffs their income as required by the settlement agreement and refused to provide them (or direct any third parties to provide them) with accounting statements.

The settlement agreement between the opposing parties states that they "agree that Burt Goldstein, C.P.A., shall maintain records of all revenue streams generated by . . . [SNZ] and shall distribute said revenue." (Defs.' Red Ryder Entertainment, Inc.s' and Erik Selz's Mot. Dismiss Ex. 2 ¶ 6.) Additionally, the agreement states that "Mr. Goldstein is authorized to obtain all necessary records to furnish quarterly accounting statements to both [Plaintiffs and Defendants Mathus and Phillips]." (<u>Id.</u>) The agreement does not place upon Messrs. Mathus and Phillips the duty of furnishing accounting statements to Plaintiffs.

The agreement does entitle the parties to a "full and permanent return of all their publishing royalties." (<u>Id.</u> ¶ 3.) In accordance with this provision, the undistributed royalties earned by the parties were to be divided and "the amounts due to Maxwell and Mosher shall be sent to Mr. Fisher." (<u>Id.</u> ¶ 4.) Though this section of the agreement did not state that either Mr. Mathus or Mr. Phillips had any duty to forward money to Plaintiffs other than the fixed amount the parties agreed upon, it did provide a good faith provision. Specifically, Messrs. Mathus and Phillips were required to "perform in good faith all actions necessary to give full force and effect to this agreement." (<u>Id.</u> ¶ 8.) Plaintiffs allege that Messrs. Phillips and Mathus fraudulently diverted and obtained royalties that belonged to Plaintiffs. This action, if proved, would constitute a breach of the settlement agreement. Accordingly, the court will deny the motion to dismiss the breach of contract claim.

## IV. ANALYSIS - RED RYDER'S MOTION TO DISMISS CROSS CLAIM

Red Ryder Defendants argue that Mr. Mathus' cross claims against them should be dismissed because there is no right for contribution or indemnification for intentional torts. In North Carolina, "[t]he right to contribution is statutory; [and] therefore, it must be enforced according to the terms of the statute." <u>Holland v. Edgerton</u>, 85 N.C. App. 567, 571, 355 S.E.2d 514, 517 (N.C. Ct. App. 1987) (citation omitted). Under North

21

Carolina law, "[t]here is no right of contribution in favor of any tort-feasor who has intentionally caused or contributed to the injury." N.C. Gen. Stat. § 1B-1(c). Additionally, North Carolina law does not allow a right to contribution in causes of action involving "breaches of trust or of other fiduciary obligation." Id. § 1B-1(g). Since Plaintiffs seek to hold Mr. Mathus liable for the intentional torts of fraud and conversion, as well as for a breach of fiduciary duty, North Carolina law bars Mr. Mathus from pursuing a right of contribution. In addition to prohibiting a right of contribution for intentional torts and breaches of fiduciary duty, North Carolina law also does not provide a right to contribution for breaches of contract. See Holland, 85 N.C. App. at 571, 355 S.E.2d at 517 ("a defendant is not entitled to contribution for a claim against him in contract.").

Mr. Mathus also seeks indemnification from Red Ryder Defendants for Plaintiffs' claims against him. A right to indemnification, however, is not available to a party when that party is charged with his own wrongdoing. See Kim v. Professional Business Brokers, Ltd., 74 N.C. App. 48, 51, 328 S.E.2d 296, 299 (N.C. Ct. App. 1985) ("Indemnity is not permitted when the defendants are in pari delicto, that is, when both defendants breach substantially equal duties owed to the plaintiff.") (citation omitted). In this case, Plaintiffs

brought an action against Mr. Mathus seeking to hold him responsible in his individual capacity for intentional misconduct, not the torts or breaches of his agents. Accordingly, Mr. Mathus' cross claim against Red Ryder Defendants will be dismissed.

## V.    CONCLUSION

For the reasons stated above,

IT IS ORDERED that

Defendants Red Ryder Entertainment, Inc. and Erik Selz's Motion to Dismiss [13] and Defendant Christopher Phillips' Motion to Dismiss [22] are **DENIED** as to Plaintiffs' claims for breach of contract, breach of fiduciary duty, conversion, and fraud;

Defendants' Motion to Dismiss [13] and [22] are **GRANTED** as to Plaintiffs' claims for unfair and deceptive trade practices and claims under the Racketeering Influenced and Corrupt Organizations Act;

Red Ryder Entertainment, Inc. and Erik Selz's Motion to Dismiss Mathus' Cross-Claims [19] is **GRANTED**.

Defendant Mathus' Motion for Leave to Join in the Rule 12(b) Motions of the Other Co-Defendants [27] is **GRANTED**.  The court has included Defendant Mathus in its decision to dismiss Plaintiffs' claims under the UTPA and RICO, and allow Plaintiffs' claims for conversion, fraud, breach of contract, and breach of fiduciary duty.

23

This the 25th day of July 2007.

_____
United States District Judge